IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Steven L. Rockwood, Jr., <br><br> Plaintiff, <br><br> v. <br><br> Sheriff of Lee County, *et al.* <br><br> Defendants. | Case No.: 23-cv-50245 <br><br> Judge Iain D. Johnston |

## MEMORANDUM OPINION AND ORDER

Plaintiff Steven L. Rockwood brings this 42 U.S.C. § 1983 action regarding his incarceration at the Lee County Jail ("the Jail"). Rockwood alleges that numerous defendants failed to timely and adequately care for his broken hand. Defendant Tammy Coil and Advanced Correctional Healthcare, Inc. ("ACH") together answered the complaint and moved under F.R.C.P. Rule 12(c) for judgment on the pleadings. Lee County, the Sheriff of Lee County, Jacob Primrose,[1] and Ryan Pettenger together answered the complaint and moved to dismiss the claims against them.[2] For the reasons below, the Court denies the motions to dismiss from Coil and Primrose, and grants the motions to dismiss from ACH, Lee County, the Sheriff of Lee County, and Pettenger.

### I. Background

The Court takes the following allegations from Rockwood's second amended complaint as well as ACH's and Coil's exhibits.[3] *See Lax v. Mayorkas*, 20 F.4th 1178,

---

[1] The Lee County Defendants' motion is unclear. Their answer and opening paragraph of their motion to dismiss indicate that they move on behalf of Primrose. However, they do not address the claims against him in the motion. The Court treats Primrose as if he also moved to dismiss the claims against him.

[2] Because they answered the complaint, the Court treats the motion to dismiss as a Rule 12(c) motion for judgement on the pleadings. *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020). The standards are identical. *Id.*

[3] Coil asked the Court to consider her exhibits, citing substantial caselaw supporting their admissibility. To the extent the exhibits are relevant (and not duplicative), they hurt her case. Under these circumstances, the Court considers the exhibits without scrutinizing their precise relationship to the complaint. The exhibits do not impact the decision regarding the Lee County Defendants. Attaching exhibits in support of a motion for judgment on the pleadings is far from best practices. If Coil truly wanted the Court to consider these exhibits, the Court would need to convert the motion into a Rule 56 motion

1181 n.1 (7th Cir. 2021); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (a court may consider exhibits attached to the complaint and documents other than the complaint "when they are referenced in the complaint and central to the plaintiff's claim."). The Court accepts the allegations as true for purposes of deciding this motion.

### a. Parties

Plaintiff Rockwood is currently incarcerated in the Illinois Department of Corrections. Dkt. 20, ¶ 8. From November 7, 2018 through August 5, 2021, he was incarcerated in the Lee County Jail. Dkt. 20, ¶¶ 20, 62. After being convicted, he was sentenced on June 3, 2021 but remained in Lee County Jail until August 5, 2021.[4] Lee County is a local government in Illinois, and the Sheriff of Lee County is responsible for the practices and procedures of the Lee County Jail and its employees. Dkt. 20, ¶ 9-11. Jacob Primrose is a Lee County Deputy who was employed at the Jail when Rockwood's injury occurred. Dkt. 20, ¶ 13. Ryan Pettenger was the superintendent of the Jail when Rockwood's injury occurred. Dkt. 20, ¶ 14. Lee County hired ACH to provide medical care and treatment at the Lee County Jail. Dkt. 20, ¶ 16. ACH employed Tammy Coil, a nurse assigned to the Jail when Rockwood's injury occurred. Dkt. 20, ¶ 17.

### b. Factual History

On Sunday, July 25, 2021, at approximately 11:00 AM, Rockwood was attacked by another inmate. *Id.* ¶ 24. Rockwood's right hand then "immediately became noticeably swollen and bruised and his finger remained bent in an unnatural position." *Id.* ¶ 26. Shortly after, Primrose entered Rockwood's cell block and allegedly noticed "what appeared to be blood" and Rockwood's broken glasses. *Id.* ¶¶ 27–28. Primrose then reviewed the surveillance video and observed the altercation. *Id.* ¶ 29. He returned to Rockwood's cell block and ordered Rockwood and the inmate involved in the altercation to their respective cells. *Id.* ¶ 30. He did not ask Rockwood if he was injured or required medical attention. *Id.* ¶ 31.

Rockwood remained in his cell for the rest of July 25 and into the morning of July 26. *Id.* ¶ 33. Throughout that time, Rockwood used the cell's emergency call button "on multiple occasions" to notify officers that he was in extreme pain from a broken hand and required medical attention. *Id.* ¶¶ 35–36. Rockwood also notified officers,

---

for summary judgment. Fed. R. Civ. P. 12(d). And, once converted into a summary judgment motion, Local Rule 56.1 becomes applicable, with which Coil fail to comply.

[4] Because Rockwood was sentenced, the Eighth Amendment—not the Fourteenth Amendment—applies despite Rockwood being housed in a local jail. *Aguilar v. Martija*, No. 22-cv-1043, 2024 U.S. Dist. LEXIS 165805, at *6-7 (N.D. Ill. Sept. 16, 2024).

including Primrose, during their in-person rounds that day and night, and showed them his hand. *Id.* ¶¶ 37–39. The officers "took no action," and instead told Rockwood that he would need to wait until the next day to see the nurse. *Id.* ¶ 36. The Jail does not employ medical staff on Saturdays and Sundays, and no medical staff was present on that Sunday, July 25. *Id.* ¶ 46; Dkt. 44, ¶ 46.

The next day, Monday, July 26, at 11:00 AM Rockwood visited the Jail's nurse, Defendant Tammy Coil. Dkt. 20, ¶ 49; Dkt 37-1, pg. 4. Coil noted that Rockwood's pinky was "very swollen" and "bruised and bent." Dkt. 20, ¶ 50; Dkt 37-1, pg. 4. Rockwood told Coil that he sustained the injury during the previous day's fight, but Coil could not confirm the origin. Dkt. 20, ¶ 50; Dkt 37-1, pg. 4. Coil noted that Rockwood was a "poor historian/frequently tells false statements." Dkt 37-1, pg. 4. In consultation with a "Dr. A. Martija," Coil ordered an X-ray of Rockwood's hand, Dkt 37-1, pg. 4,[5] and gave him an ice pack and acetaminophen. Dkt. 20, ¶ 55.

At or around 8:45 AM on July 28, Rockwood received an X-ray. Dkt. 20, ¶ 57; Dkt 37-1, pg. 2. It revealed an "acute, nondisplaced fracture of the distal aspect of the fourth metatarsal." Dkt 37-1, pg. 2. A report documenting those results was signed at 9:18 AM on July 28. *Id.* Rockwood alleges that "Defendants" were aware of the fracture diagnosis on July 28, but did not provide him with a splint. Dkt. 20, ¶ 59. The next day, July 29, at 2:20 PM, Coil "left a voicemail for Dr. Martija about Rockwood's hand X-ray results." Dkt 37-1, pg. 2. An hour later, Dr. Martija ordered an "ortho" for Monday, August 2 for a "special splint." *Id.* At his August 2 appointment, Rockwood alleges that a doctor said to the transporting officer something along the lines of "it has been nine days, what do you expect me to do with it now." Dkt. 20, ¶ 61. Rockwood alleges that he still has pain from the injury and that it requires prescription medication. Dkt. 20, ¶ 63.

### c. Procedural History

Rockwood filed an amended complaint *pro se* on August 14, 2023. Dkt. 6. Screening the complaint under 28 U.S.C. § 1915A, which requires the same 12(b)(6) standard, *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006), the Court found that "Plaintiff's allegations arguably state[d] a constitutional claim for inadequate medical care." Dkt. 7, pg. 3. The Court ultimately dismissed the complaint without prejudice, and granted Plaintiff's motion for attorney representation. *Id.*

Rockwood filed this second amended complaint on March 28, 2024. Dkt. 20. The second amended complaint's factual allegations largely match those in the first

---

[5] Plaintiff alleges that "defendants did not *schedule* an x-ray until July 28, 2021." Dkt. 20, ¶ 57 (emphasis added). Plaintiff received an X-ray on July 28, 2021. Coil's notes, ostensibly from the July 26 visit, indicate that she planned to order an X-ray. It's unclear when Coil scheduled the appointment or if the first opportunity was the 28th.

amended complaint. Rockwood named additional defendants and identified some of the individuals previously listed as "John/Jane Doe." Counts I, II, and V are § 1983 claims against Primrose, Coil, and Pettenger, respectively. Counts IV, VI, VII are *Monell* claims against the Lee County Sheriff, Lee County, and ACH, respectively.

On June 5, 2024, ACH and Coil jointly answered the complaint. Dkt. 35. The next day, ACH and Coil moved for judgment on the pleadings. Dkt. 36. On June 28, 2024, Lee County, Ryan Pettenger, Jacob Primrose, and Sheriff of Lee County answered the complaint and also moved to dismiss it. Dkt. 44, 45.

## II.    Legal Standard

Federal Rule of Civil Procedure 8 requires that a plaintiff's complaint contain a "short and plain statement" establishing the basis for the claim and the Court's jurisdiction. Fed R. Civ. P. R. 8(a). A plaintiff will survive a Rule 12(b)(6) motion if the plaintiff alleges facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff. *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). The Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 578 (7th Cir. 2009). The moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021). The Court applies the same 12(b)(6) standard to 12(c) motions for judgment on the pleadings. *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020).

The Eighth Amendment requires prison officials to provide healthcare to incarcerated persons. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021) (citing *Estelle v. Gamble,* 429 U.S. 97, 103–04, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The Amendment guards against prison conditions that cause "the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). "Denying or delaying treatment to an incarcerated person suffering from avoidable pain" can give rise to an Eighth Amendment claim. *Howell*, 987 F.3d at 653.

Section 1983 creates a private right of action against a "person" who acts under color of state law to deprive another of a right under federal law, including the Constitution. 42 U.S.C. § 1983. "A key part of § 1983's doctrinal structure is the difference between individual and governmental liability." *Howell*, 987 F.3d at 653. Individual liability requires personal involvement in the constitutional violation and "depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). Neither an individual supervisor nor a governmental entity can be held vicariously

liable under § 1983. *See Burks*, 555 F.3d at 594–95; *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A local government may be liable for damages under § 1983 if the constitutional violation is caused by: "(1) an express government policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority." *Howell*, 987 F.3d at 653.

### III. Analysis

#### a. Individual Capacity Defendants

Prison officials violate the Eighth Amendment when 1) a prisoner experienced an "objectively serious medical condition" and 2) the prison official was deliberately indifferent to that condition. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). "Deliberate indifference" means that the official "acted with a sufficiently culpable state of mind, something akin to recklessness." *Id.* at 751. The official acts with that state of mind when he knows of a substantial risk and either acts or fails to act in disregard of that risk. *Id.* Deliberate indifference requires more than negligence and approaches intentional wrongdoing. *Id.* Individual liability requires personal involvement in the wrongdoing. *Burks*, 555 at 592.

The Court first considers whether Rockwood suffered an "objectively serious injury." As this Court found in its 28 U.S.C. § 1915A order, allegations that a person suffered a broken hand are "sufficient to allege an objectively serious medical condition." Dkt. 7 at 3. Coil and ACH concede for purposes of their motion that Rockwood sustained a serious injury. Dkt. 37, pg. 8. Further, in *Edwards v. Snyder*, plaintiff severely dislocated his finger during a basketball game. 478 F.3d 827, 828 (7th Cir. 2007). The Seventh Circuit vacated the district court's § 1915A order dismissing the case. *Id.* at 832. It cited numerous cases involving injuries that were "objectively serious" in the Eighth Amendment context, including a hernia, arthritis, minor burns, and a broken wrist. *See id.* at 831 (collecting cases); *see also Jackson v. Anderson*, 770 F. App'x. 291, 293 (7th Cir. 2019) (characterizing a broken bone as "a clearly serious medical condition"). The *Edwards* court concluded that plaintiff's dislocated finger could constitute a serious injury. 478 F.3d at 831. Rockwood's broken finger was similarly serious.

Next, the Court considers whether Rockwood sufficiently alleges that Defendants were deliberately indifferent to his serious injury. It considers each Defendant in turn.

#### 1. Coil

Rockwood visited Coil the morning after he allegedly broke his finger. Both her notes and Rockwood's allegations reflect that she provided him with acetaminophen and ice. She did not give Rockwood a splint, nor arrange an immediate X-ray. Her notes

show that approximately 24 hours passed between when Rockwood's X-ray revealed a broken finger and when she left a voicemail message asking the doctor for further instructions. The notes further suggest that her treatment plan may have been influenced by the fact that Rockwood, at times, exaggerated his injuries. Coil is right that "as a nurse [she] generally cannot diagnose illness or prescribe medications or treatment," but that does not absolve her of responsibility if she recklessly made an initial assessment or improperly delayed contact with a physician.

True, "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (affirming a district court's judgement as a matter of a law following a jury trial, not at the motion to dismiss stage).[6] And as Coil correctly notes, the professional displays deliberate indifference only if they substantially depart from accepted professional judgment, practice or standards. *Id.*. But merely showing "that a plaintiff received 'some' treatment does not resolve the issue conclusively." *Id.* Rockwood must ultimately establish more, but whether Coil acted consistent with accepted medical practices is too uncertain at this early stage. Coil does not establish that Rockwood's claims are legally insufficient.

 2. Primrose

Rockwood alleges that Primrose entered Rockwood's cell block shortly after the altercation and saw blood on the floor and broken glasses. Primrose then reviewed a video recording of the incident. He sent Rockwood to his cell and did not act in response to Rockwood's repeated requests for medical attention. As Coil's notes show (and the subsequent diagnosis suggests), Rockwood's hand was bruised and disfigured. Whether Primrose's response constituted "deliberate indifference" at this stage is unclear, but he does not establish that Rockwood's claims are legally insufficient.

 3. Pettenger

Rockwood alleges no facts suggesting that Superintendent Pettenger was at all involved in the incident. A non-medical prison supervisor such as a warden or prison director "is entitled to relegate to the prison's medical staff the provision of good medical care," *Burks*, 555 F.3d at 595, and may be held individually liable only if he "knows of and disregards an excessive risk to inmate health or safety," *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). *See also Arnett*,

---

[6] Coil primarily relies on judgment as a matter of law or summary judgement cases in support of the Rule 12(c) motion. That's a mistake. *See* Standing Order, *Supporting Memoranda & Exhibits* ("The Court urges litigants to rely on cases that were decided in the same procedural posture.").

658 F.3d at 757 (supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye"). The Court dismisses the claims against Pettenger.

4. ACH

Rockwood sued ACH "individually and as an agent of the Sheriff of Lee County." To the extent a distinctly individual-capacity claim against a company under these circumstances is cognizable, it would fail because § 1983 does not permit respondeat superior liability. *Shields v. Illinois Dep't of Corr*, 746 F.3d 782, 790 (7th Cir. 2014) (quoting *Iskander v. Village of Forest Park*, 690 F. 2d 126 (7th Cir. 1982) "[a] private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights.").

b. *Municipal and Official Capacity Defendants*

Rockwood sues formal entities (Lee County and the Lee County Sheriff) as well as agents in their official capacities (Pettenger, Primrose, Coil, ACH). Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (quoting *Monell*, 436 U.S. at 690 n. 55). An official-capacity suit is not a suit against the official as an individual; the real party in interest is the entity. *Wilson v. Civ. Town of Clayton, Ind.*, 839 F.2d 375, 381–82 (7th Cir. 1988). Therefore a plaintiff seeking to recover damages in an official-capacity suit can look only to the entity itself, not to the official. *Id.* So, the Court treats Lee County, the Lee County Sheriff, and the official-capacity suits against Pettenger, Primrose, and Coil as one claim against Lee County and one claim against ACH—all under a *Monell* theory.

In applying *Monell*, the Court distinguishes between isolated wrongdoing of one or a few individuals and more widespread practices. *Howell*, 987 at 654. A municipality (or an applicable private healthcare provider)[7] is only liable for the latter. *Id.* No brightline rule exists regarding the quantity, quality, or frequency of conduct needed to prove a widespread custom or practice under *Monell*. *Id.* "What is needed is evidence that there is a true municipal [or corporate] policy at issue, not a random event." *Grievson* 538 F.3d at 327; *see also Howell*, 987 at 654 (citing Seventh Circuit cases that required a "series" or "pattern" of incidents, not "isolated acts of misconduct.").

Rockwood does not identify an express policy, a pattern or practice, or a lawmaking official's decision that he claims led to his injuries. He alleges generally that the county failed to train or supervise its employees, among other administrative failures.

---

[7] *Monell* applies to private corporations like ACH, because it contracted with the City to provide obligatory healthcare. *Shields*, 746 F.3d at 786.

To be sure, Rockwood's broken finger no doubt caused significant pain, some of which may have been mitigated by more timely treatment. But without more, those allegations at best suggest isolated wrongdoing, not a widespread practice.

Rockwood's *Monell* claims are dismissed without prejudice; he *may* therefore refile a complaint against the municipal defendants. But as it has done before, *see Marsden v. Kishwaukee Cmty. Coll.*, 572 F. Supp. 3d 512, 525 (N.D. Ill. 2021), the Court offers a few words of advice: in Illinois, a *Monell* claim has no practical consequences as to damages. *Jones v. City of Chicago*, 856 F.2d 985, 995 (7th Cir. 1988). Under Illinois law, plaintiffs who prevail will receive the amount of compensatory damages the jury determines that they are entitled to; plaintiffs do not receive more compensatory damages just because there are more defendants. Compensatory damages compensate; they don't provide a windfall. *Hillmann v. City of Chicago*, 66 F. Supp. 3d 1109, 1117 (N.D. Ill. 2014). Moreover, under Illinois law, generally, local governments and their contractual agents are required to indemnify employees for compensatory damages. 745 ILCS 10/2-302; 110 ILCS 805/3-29. And, under Seventh Circuit law, plaintiffs can simply add an indemnification claim in their complaint to ensure recovery of compensatory damages. *Wilson v. City of Chicago*, 120 F.3d 681, 684-85 (7th Cir. 1997). So, adding a *Monell* claim provides nothing to plaintiffs' compensatory damages. And, under *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, (1981), punitive damages are unavailable against units of local government for violations of claims brought under § 1983. What's more, under Illinois law, punitive damages are unavailable against local governments. 745 ILCS 10/2-102. So, in reality, a *Monell* claim adds nothing to plaintiffs' potential damages.

**Conclusion**

For the reasons above, the Court denies Coil's and Primrose's motions; it dismisses without prejudice the claims against ACH. The Court treats all of the official-capacity and entity suits as against Lee County and dismisses the claims against it without prejudice. Rockwood is given one last attempt to state a claim against ACH and Lee County so long as the attempt is consistent with Rule 11. Rockwood is given until October 24, 2024 to file any amended complaint. If no amended complaint is filed by that date, the dismissal will convert to dismissal with prejudice.

Entered: September 24, 2024    By: _____
                                   Iain D. Johnston
                                   U.S. District Judge